**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-18-0000604**
**19-JUN-2019**
**10:17 AM**

NO. CAAP-18-0000604

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee,
v.
RYAN NAKACHI, Defendant-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 1PC161001953 (CR 16-1-1953))


SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Chan and Hiraoka, JJ.)

Defendant-Appellant Ryan Nakachi (Nakachi) was charged by indictment with Robbery in the Second Degree, in violation of Hawaii Revised Statutes (HRS) § 708-841(1)(a) (2014).[1] After a jury trial, Nakachi was found guilty as charged. Nakachi now appeals from the July 30, 2018 Amended Judgment of Conviction and Probation Sentence (Amended Judgment), entered by the Circuit Court of the First Circuit (circuit court).[2] Nakachi also challenges the July 5, 2018 Judgment of Conviction and Probation Sentence and the July 6, 2018 Amended Judgment of Conviction and

---

[1] HRS § 708-841 provides, in relevant part:

§708-841 **Robbery in the second degree.** (1) A person commits the offense of robbery in the second degree if, in the course of committing theft or non-consensual taking of a motor vehicle:
(a) The person uses force against the person of anyone present with the intent to overcome that person's physical resistance or physical power of resistance[.]

[2] The Honorable Fa'auuga L. To'oto'o presided.

Probation Sentence.

On appeal, Nakachi argues the circuit court erred by: (1) engaging Nakachi in a deficient Tachibana[3] colloquy; and (2) refusing to instruct the jury on self-defense and mistake-of-fact.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments they advance and the issues they raise, as well as the relevant statutory and case law, we resolve Nakachi's points of error as follows.

(1) Nakachi did not testify at trial. Following the State's case-in-chief, the defense indicated that it had no witnesses and would not be presenting any evidence. The circuit court then administered the ultimate Tachibana colloquy as follows:

> THE COURT: Okay. All right. As I discussed with you before the start of our trial yesterday, you have the constitutional right to testify in your own defense. Although you should -- you should consult with your lawyer regarding your decision to testify, it is your decision and no one can prevent you from testifying should you choose to do so. If you do decide to testify, the prosecutor will be allowed to cross-examine you.
>
> You are also informed that you have the constitutional right not to testify and to remain silent. If you choose not to testify, the jury will be instructed that it cannot hold your silence against you in deciding your case.
>
> It is the understanding of the Court this morning from your attorney that you have decided, or based on your discussion and his advice, you have elected to exercise your right to remain silent in your trial?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. And, Mr. Nakachi, I trust you have discussed this matter with your attorney?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And based on your discussion and your attorney's advice, you have elected to exercise your right to remain silent?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Is anybody forcing you or threatening you to not testify in your trial?
>
> THE DEFENDANT: No.
>
> THE COURT: And this is your decision alone after you

_____

[3] Tachibana v. State, 79 Hawai'i 226, 900 P.2d 1293 (1995).

discussed the matter with your attorney?

THE DEFENDANT: Yes.

THE COURT: And, all right, let's see. And this morning did you take any medication before you came to court this morning?

THE DEFENDANT: No.

THE COURT: Are you under any doctor's care this morning?

THE DEFENDANT: No.

THE COURT: Did you consume or take any alcohol this morning?

THE DEFENDANT: No.

THE COURT: So your mind is clear this morning?

THE DEFENDANT: Yes.

THE COURT: And, okay, all right. Based on that the Court finds -- will accept the defendant's right to exercise his right to remain silent. Thank you very much.

Later that same morning, the circuit court clarified the record by stating:

THE COURT: All right. Let the record reflect the absence of the jury, except for counsel and Mr. Nakachi. Just to make sure that the record is clear, all right, based on the -- based on Mr. Nakachi's answer to the Court's question regarding whether he was going to testify, Court finds that based on the defendant's responses to the Court's question, Court finds defendant knowingly, voluntarily and intelligently waived his right to testify in his own defense.

Nakachi argues that the circuit court's ultimate Tachibana colloquy was deficient because the circuit court failed to engage in a "true colloquy" and instead merely recited a litany of rights.

Trial courts are required to "conduct an 'ultimate colloquy' in cases in which a defendant has not testified prior to the close of the case." State v. Monteil, 134 Hawai'i 361, 370, 341 P.3d 567, 576 (2014). The first component of a proper Tachibana colloquy consists of fully informing a defendant as to the five fundamental principles pertaining to his right to testify and right not to testify. State v. Celestine, 142 Hawai'i 165, 170, 415 P.3d 907, 912 (2018). These five principles are: (1) a defendant has a right to testify; (2) if a defendant wants to testify, no one can prevent him or her from

3

doing so; (3) if a defendant testifies, the prosecution will be allowed to cross-examine him or her; (4) a defendant has a right not to testify because of the privilege against self-incrimination; and (5) if a defendant does not testify, then the jury can be instructed about that right and instructed that it cannot hold the defendant's silence against the defendant. Tachibana, 79 Hawaiʻi at 236 n.7, 900 P.2d at 1303 n.7. Nakachi does not dispute that the circuit court properly informed Nakachi of these five principles and satisfied the first component of a Tachibana colloquy.

The second component involves the court engaging in a true "colloquy" with the defendant, which "consists of a verbal exchange between the judge and the defendant 'in which the judge ascertains the defendant's understanding of the proceedings and of the defendant's rights.'" Celestine, 142 Hawaiʻi at 170, 415 P.3d at 912 (emphasis omitted) (quoting State v. Han, 130 Hawaiʻi 83, 90, 306 P.3d 128, 135 (2013)).

The Hawaiʻi Supreme Court has recently stated that a trial court should engage in a verbal exchange with the defendant at least twice during the colloquy: (1) once after informing the defendant of the rights to and not to testify and the protections associated with these rights; and (2) once again after the court indicates to the defendant its understanding that the defendant does not intend to testify. Id. (citing Han, 130 Hawaiʻi at 90-91, 306 P.3d at 135-36).[4] Nakachi contends that because the circuit court informed him of his rights "without pausing to ensure that Nakachi understood, the Tachibana colloquy was faulty." We agree.

After informing Nakachi of the principles pertaining to

---

[4] The supreme court noted, however, that their decision in Celestine was

> not intended to establish that the verbal exchange must occur at specific junctures in the colloquy. A trial court is required, however, to engage the defendant in a true colloquy to ascertain the defendant's understanding of the significant rights stated and to ensure that the defendant's decision not to testify is made with an understanding of these rights.
> Han, 130 Hawaiʻi at 90-91, 306 P.3d at 135-36.

Id. at 172 n.15, 415 P.3d at 914 n.15.

his rights to and not to testify, the circuit court did not pause to obtain a response from Nakachi as to whether he understood these principles. The circuit court instead proceeded with the advisement and asked Nakachi to confirm the court's understanding that Nakachi had chosen not to testify. At no point in the ultimate colloquy did the circuit court engage in a verbal exchange with Nakachi to ascertain whether his waiver of his right to testify was based on his understanding of the principles related by the circuit court and, therefore, the record does not demonstrate that Nakachi's waiver of his right to testify was knowingly, intelligently, and voluntarily made. Id. at 172, 415 P.3d at 914. Thus, the circuit court did not conduct a proper Tachibana colloquy.

"When the Tachibana colloquy is inadequate to provide an 'objective basis' for finding the defendant 'knowingly, intelligently, and voluntarily' relinquished the right to testify, the constitutional right to testify is violated." Id. at 173 n.17, 415 P.3d at 915 n.17 (citing State v. Eduwensuyi, 141 Hawai'i 328, 409 P.3d 732, 737 (2018)).

> Once a violation of the constitutional right to testify is established, the conviction must be vacated unless the State can prove that the violation was harmless beyond a reasonable doubt. The relevant question is whether there is a reasonable possibility that the error might have contributed to the conviction.

Id. at 173, 415 P.3d at 915 (internal quotation marks, brackets, and citations omitted).

Here, the record does not contain any indication as to what Nakachi would have said if he testified. We cannot conclude that the circuit court's error was harmless because we are unable to determine whether Nakachi's testimony, had he given it, could have created reasonable doubt that he committed Robbery in the Second Degree. See State v. Pomroy, 132 Hawai'i 85, 94, 319 P.3d 1093, 1102 (2014). Nakachi's conviction therefore must be vacated.[5]

(2) Nakachi next contends that the circuit court erred

---

[5] Although our disposition of Nakachi's first point of error is outcome-dispositive of the present appeal, we address Nakachi's additional point of error in order to provide guidance to the circuit court and the parties on remand.

in declining to instruct the jury on both self-defense and mistake-of-fact, where there was at least a scintilla of evidence to support these defenses. Nakachi argues that there is a scintilla of evidence that Nakachi could have mistakenly perceived the asset protection manager's bearhug "as an unprovoked physical attack on himself, against which he was authorized to use force for self-protection."

Under HRS § 702-218 (2014), mistake-of-fact is a defense where the ignorance or mistake "negatives the state of mind required to establish an element of the offense[.]" In this case, HRS § 708-841(1)(a) provides that a person commits the offense of Robbery in the Second Degree if, "in the course of committing theft . . . : . . . .[t]he person uses force against the person of anyone present with the intent to overcome that person's physical resistance or physical power of resistance[.]" The offense of Robbery in the Second Degree is committed if, in the course of committing a theft, a defendant uses force against "anyone present" without regard to the identity of that person. See State v. Manning, No. CAAP-14-0000766, 2017 WL 770781, at *2 (Haw. App. Feb. 28, 2017) (SDO). Thus, Nakachi's purported mistaken belief as to Oyama's identity was irrelevant and did not serve to negative the required state of mind for Robbery in the Second Degree under HRS § 708-841(1)(a). The circuit court therefore did not err in declining to give a mistake-of-fact instruction.

With regards to the self-defense instruction, HRS § 703-304(1) (2014) provides, in relevant part: "[T]he use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by the other person on the present occasion."

As noted above, the offense of Robbery in the Second Degree under HRS § 708-841(1)(a) requires that the defendant "uses force against the person of anyone present with the intent to overcome that person's physical resistance or physical power of resistance[.]" The offense does not differentiate between lawful/justifiable force and unlawful/unjustifiable force and

thus self-defense is not a defense to the charge of Robbery in the Second Degree under HRS § 708-841(1)(a). State v. Cabasag, 101 Hawai'i 149, 153, 64 P.3d 278, 282 (App. 2003). Therefore, the circuit court did not err in declining to give a self-defense instruction.

Based on the foregoing, we vacate the July 30, 2018 Amended Judgment of Conviction and Probation Sentence, the July 6, 2018 Amended Judgment of Conviction and Probation Sentence, and the July 5, 2018 Judgment of Conviction and Probation Sentence, and remand this matter to the Circuit Court of the First Circuit for a new trial.

DATED: Honolulu, Hawai'i, June 19, 2019.

On the briefs:

Phyllis J. Hironaka,
Deputy Public Defender,
for Defendant-Appellant.

Loren J. Thomas,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Keith K Hiraoka

Associate Judge